567 So.2d 911 (1990)
Charles Wesley BRADFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1155.
District Court of Appeal of Florida, First District.
September 4, 1990.
Rehearing Denied October 31, 1990.
*912 Barbara M. Linthicum, Public Defender, Nancy L. Showalter, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
Appellant seeks review of a judgment of conviction and sentence by which he was convicted of battery on a police officer, resisting an officer without violence, and possession of cocaine and possession of paraphernalia, and was sentenced as an habitual offender to a total of 20 years imprisonment. We affirm, finding no reversible error in appellant's contentions that the court should have granted his motion to suppress, that the evidence was insufficient to sustain the conviction for resisting arrest without violence, that section 775.084, Florida Statutes, is impermissibly inequitable, irrational, and vague, that the court erred in sentencing appellant as an habitual offender without making the requisite findings and providing the requisite notice, and that it improperly departed from the sentencing guidelines without written reasons. We affirm for reasons detailed below, and because the constitutional issues are controlled by this court's opinion in Barber v. State, 564 So.2d 1169 (Fla. 1st DCA 1990).
The incident in question occurred at approximately 4:00 in the morning. An officer with the narcotics division of the Escambia County sheriff's department testified that he was patrolling in his car on the night in question in a part of town which had been plagued by "numerous" recent burglaries and which consisted largely of commercial buildings. He testified that he was driving through the main road in this section of town when he noticed appellant walking in the opposite direction along the sidewalk. He admitted that he observed no illegal activity by appellant and did not have any reason to believe appellant was about to or had committed a crime. The officer testified that when he saw appellant he decided to turn his car around and follow him because he was concerned about *913 what appellant was doing in that area of town at that time of night.
The officer stopped his car and beckoned to appellant to come over to the police car. He testified that appellant hesitated at first and then complied. The officer stated that he did not recognize appellant and requested identification. Appellant produced a driver's license.
The officer summarized what happened next as follows: "At that point he was wearing a jacket which was baggy, and at that point for my own personal safety reasons I conducted just a quick pat-down search for any type of weapons." He felt what he thought was a matchbox in appellant's pocket but admitted that he did not think the object was a weapon of any kind. He testified that matchboxes of a certain kind are often used to carry crack cocaine, so he inquired of appellant as to what was in his pocket. The officer then reached into appellant's pocket to remove the item, but appellant hit him in the chest with enough force to cause him to stumble backwards. At one point he had grasped the item long enough to identify it as a "redtop matchbox," the particular kind he said was preferred by drug carriers.
Appellant turned and ran down the street. The officer ran to his vehicle to radio the police station and then chased appellant approximately 50 yards into the parking lot of a restaurant. The officer testified that appellant then "turned on me, and he grabbed me and tried to throw me to the ground and a fight ensued." A second officer arrived at that time to find appellant face down on the pavement and held in place by the first officer. The second officer helped place appellant under arrest and put him in the back seat of the patrol car of a third officer.
According to the officer who transported appellant to the hospital, once they arrived at the hospital appellant had to remove his jacket to obtain medical treatment. As appellant removed his jacket he held closed the front left pocket of his jacket. Once he had removed the jacket, the officer looked into the pocket and found a crack pipe with cocaine residue on it.
Appellant was charged with battery on a law enforcement officer, resisting arrest with violence, possession of paraphernalia, and constructive possession of cocaine. Appellant filed a pretrial motion to suppress the paraphernalia and cocaine, and a motion to dismiss the charges of battery on a law enforcement officer and resisting arrest with violence. Both motions were denied, the court finding that the initial exchange between appellant and the police officer was a consensual encounter involving a permissible brief detainment. The court stated: "Assuming arguendo ... that the pat-down frisk was not one based on reasonable suspicion, that was attenuated by the defendant's own subsequent conduct by turning and battering the police officer."
Appellant was subsequently convicted after a jury trial and a sentencing guidelines scoresheet was prepared showing a recommended sentence of 4 1/2 to 5 1/2 years' imprisonment. The court noted that appellant had been convicted of two or more felonies in this state, that the felony for which appellant was to be sentenced was committed within five years of the date of conviction of the last prior felony, that appellant had not received a pardon for any offense, and that no conviction had been set aside in any postconviction proceeding. The court determined "that it's necessary in this instance for the protection of the public to sentence the defendant to the extended term as provided in this section as an habitual felony offender."
On the suppression issue it is clear that appellant was initially called over by the officer and complied, supporting the trial court's finding that the initial encounter between appellant and the officer was consensual. However, the officer did not have reasonable suspicion to support his subsequent pat-down search of appellant based only on appellant's wearing a loose jacket. He also improperly reached into appellant's jacket pocket when he felt a hard rectangular object which he did not think was a weapon. See Warren v. State, 547 So.2d 324 (Fla. 5th DCA 1989). A motion to suppress directed solely to the *914 matchbox might therefore have been granted.
However, because the physical evidence admitted against appellant consisted of the crack pipe with cocaine residue which was found after appellant was chased, arrested, and taken to the hospital, we must determine whether the officer's actions in chasing appellant and arresting him for some offense other than possession of the matchbox were proper. If appellant was properly arrested, then the search at the hospital was a lawful search incident to arrest, and the motion to suppress directed to the crack pipe and residue was properly denied.
In determining whether appellant was lawfully arrested, a consideration of appellant's action in shoving the police officer during the attempted, improper initial search is necessary. The jury convicted appellant of battery on a law enforcement officer under section 784.07(2)(b). A person has committed a battery under section 784.03(1)(a) if he "[a]ctually and intentionally touches or strikes another person against the will of the other." Section 784.07(2)(b) reclassifies such a battery, when it has been committed on a law enforcement officer while he "is engaged in the lawful performance of his duties," as a third degree felony. Although we conclude that the officer was not "engaged in the lawful performance of his duties" when he initially searched appellant, it is clear from the record that appellant intentionally struck the officer in violation of section 784.03(1)(a) during that encounter. Therefore, although the conviction for battery on a law enforcement officer is also clearly affirmable based on appellant's battery on the officer after the subsequent chase, there was nevertheless prima facie evidence of a simple battery under 784.03(1)(a) on the officer during the initial encounter to warrant the officer's subsequent actions in chasing, arresting, and ultimately searching appellant.
Alternatively, we note that appellant was originally charged by information with resisting an officer with violence to his person in violation of section 843.01. (He was ultimately convicted of resisting arrest without violence, however.) That section provides that "[w]hoever knowingly ... resists ... any officer ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer ... is guilty of a felony of the third degree... ." Carwise v. State, 454 So.2d 707 (Fla. 1st DCA 1984), indicates that a determination of impropriety in an officer's performance of his legal duty at the time of a defendant's forcible resistance of that officer is not a defense to the charge of resisting an officer under section 843.01. See also K.Y.E. v. State, 557 So.2d 956 (Fla. 1st DCA 1990). The sequence of events set forth above which would support a conviction of a simple battery would also support a conviction on the charge of resisting arrest with violence. Thus, the officer's pursuit, arrest and search of appellant was proper because it was supported by sufficient evidence of either a prior battery or resisting arrest with violence.
Appellant cites to Brannen v. State, 453 So.2d 428 (Fla. 1st DCA 1984), for support for his argument that, in spite of section 776.051(1), he cannot be charged with resisting arrest with violence where the officer was improperly searching him and was not engaged in the lawful execution of a legal duty at the time of the resistance. In Brannen this court stated: "The offense of resisting an officer, either with or without violence, requires, as an essential element, that the officer be engaged `in the execution of legal process or in the lawful execution of any legal duty.'" Id. at 428. The court also noted that "the trial court erred in not affording the defendant the opportunity of having the jury determine the question of whether this particular arrest for disorderly intoxication was lawful." Thus, the issue before the court in Brannen was whether, in a case involving a charge of resisting arrest (with or without violence), the lawfulness of the officer's activity is a fact question for the jury, and not whether a defendant can be properly convicted of resisting arrest with violence even where the underlying arrest is unlawful. As is evident from K.Y.E., *915 supra, Ivester v. State, 398 So.2d 926 (Fla. 1st DCA 1981), Lowery v. State, 356 So.2d 1325 (Fla. 4th DCA 1978), and many other cases, sections 843.01 and 776.051(1) penalize a defendant's resistance of an unlawful arrest with violence.
Appellant was ultimately convicted of resisting arrest without violence under section 843.02. Appellant argues that the state failed to prove an element of that offense, i.e., that the officer had to be in the lawful execution of a legal duty at the time of the resistance. See Lee v. State, 368 So.2d 395 (Fla. 3d DCA 1979).
Even assuming that the jury based its conviction for resisting arrest without violence on the initial encounter, we conclude that it was proper. As noted above, the illegality of an underlying arrest is not alone sufficient as a defense to a charge of resisting arrest with force or violence. K.Y.E., supra. Appellant could therefore have been properly convicted of resisting arrest with violence under section 843.01. Defense counsel requested a jury instruction on the lesser included offense of resisting arrest without violence, and may not, therefore, complain of his conviction for that offense. Silvestri v. State, 332 So.2d 351, 353-54 (Fla. 4th DCA 1976), aff'd 340 So.2d 928 (Fla. 1976). Nor can the sufficiency of evidence on a lesser included crime be considered when the evidence is sufficient to convict for a greater one. Morley v. State, 362 So.2d 1013 (Fla. 1st DCA 1978). Whether or not resisting arrest without violence is a lesser included offense of resisting arrest with violence (when conviction for the former requires a valid underlying arrest), the parties treated it as such and waived the issue by requesting jury instructions accordingly.
With respect to sentencing requirements argued by appellant, section 775.084(3), Florida Statutes, as amended in 1988, requires only that the trial court determine whether the defendant is an habitual felony offender or an habitual violent felony offender. Appellant does not dispute that he meets the technical requirements to be sentenced as an habitual offender, and the court so determined, supra.
As to the written notice required by section 775.084(3)(b), Florida Statutes, the transcript of the trial proceeding reflects that the court inquired of the attorneys, and the state replied without question from defense counsel:

We filed the notice of intent to seek habitual felon sanctions. I think the law requires you under the new section to order a PSI, and we're sticking with the career criminal thing. (e.s.)
THE COURT: In other words, because of his prior felony record you wish to enhance the penalties in this case, is that correct, the proper notice having been filed? (e.s.)
THE STATE: Yes sir.
It is clear that appellant did receive this record notice of the state's intentions at the end of the trial (27 days prior to his sentencing), giving ample time to prepare a submission at sentencing. Appellant does not reference the quoted portion of the record or reply to the state's contentions here. Although the decision in Crapps v. State, 483 So.2d 544 (Fla. 1st DCA 1986), appears to be that compliance with section 775.084(3)(b) is mandatory and failure to initiate contemporaneous objection does not constitute a waiver, that rationale does not preclude a finding of harmlessness based on the clear record notice herein.
Owens v. State, 560 So.2d 1260 (Fla. 1st DCA 1990), has found that section 775.084(4)(e) exempts from the operation of the sentencing guidelines all sentences imposed under the amended habitual offender statute. Accordingly, a trial court is not required to provide written reasons for imposing a sentence in excess of the presumptive guidelines sentence when it determines that the defendant fits the statutory definition of an habitual felony offender.
Affirmed.
ERVIN and MINER, JJ., concur.